UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>RONDA SNEVA,<br>R&G FOOD SERVICES, INC. dba<br>LATITUDE CATERING,<br><br>                Debtor. | Chapter 11 Proceeding<br><br>Case No. 4:15-bk-13185-BMW<br>          4:15-bk-13187-BMW<br><br>(Jointly Administered) |
| RONDA SNEVA,<br><br>                Plaintiff,<br><br>v.<br><br>R&G FOOD SERVICES, INC. dba<br>LATITUDE CATERING,<br>                Defendant. | Adv. Case No. 4:17-ap-00624-BMW<br><br>**SUPPLEMENTAL MEMORANDUM DECISION** |

## I. Introduction

This matter is before the Court pursuant to the *[Proposed] Judgment* (the "Proposed Judgment") submitted by the Debtor, Ronda Sneva ("Ms. Sneva") (Dkt. 44 at Ex. A); the *Notice of Filing Proposed Revisions to Form of Judgment* (the "Proposed Revisions") submitted by Gary Sneva ("Mr. Sneva") (Dkt. 45); the *Objection to Ronda Sneva's [Revised] Proposed Judgment* (the "Objection") filed by R&G Food Services, Inc. dba Latitude Catering ("R&G") (Dkt. 46); and all pleadings related thereto.

      Based upon the pleadings, the arguments of counsel, and the entire record in this adversary and in the related administrative case, the Court issues the following ruling, which

supplements the ruling set forth in its *Memorandum Decision* issued on March 28, 2019 (the "Memorandum Decision") (Dkt. 39).

## II. Jurisdiction

As set forth in the Memorandum Decision, jurisdiction is properly before this Court. This ruling constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated by Federal Rule of Bankruptcy Procedure 7052.

## III. Factual Background

On March 28, 2019, the Court issued the Memorandum Decision, which disposed of the liability component of this adversary. In the Memorandum Decision, the Court found that R&G had: (1) breached various sections of a certain Employment Agreement (the "Employment Agreement") (TE 1);[1] (2) breached the implied covenant of good faith and fair dealing; and (3) terminated Ms. Sneva not for cause. The Court also found that Ms. Sneva had breached a provision of the Employment Agreement, but the Court determined that such breach was immaterial. (Dkt. 39).

After entry of the Memorandum Decision, the Court held a hearing on May 6, 2019, to determine how to proceed on the damages component. At that hearing the Court instructed Ms. Sneva to submit a proposed form of judgment, and gave R&G and Mr. Sneva the opportunity to respond thereto.

Ms. Sneva's Proposed Judgment sets forth monetary damages, some of which are calculated according to the language in a severance provision (the "Provision") in the Employment Agreement. Mr. Sneva submitted the Proposed Revisions, which revisions provide for certain amounts to be paid from R&G to him directly, rather than through the confirmed *Second Amended Joint Chapter 11 Plan of Reorganization for R & G Food Services, Inc., dba Latitude Catering and Ronda Sneva Dated August 9, 2016* (the "Joint Plan") (Admin. Dkt. 481).[2] R&G objected to the Proposed Judgment and Proposed Revisions, in part, on the basis that the Provision operates as an unenforceable penalty.

---

[1] References to exhibits admitted into evidence at trial are indicated by "(TE __)."
[2] References to the "Admin Dkt." are references to docket entries on the administrative docket, case number 4:15-bk-13185-BMW, of which the Court will take judicial notice.

The Provision, which is set forth in Section Thirteen of the Employment Agreement, provides, in pertinent part, as follows:

> A. If, prior to the expiration of the Initial Term, the Company terminates the Employee's employment for any reason other than death or Cause (collectively, "Involuntary Termination"), the Employee shall be entitled to payment of Base Salary, Plan Payments, and Employee's Section 6 Bonuses accrued up to and including the date of termination or resignation, payment in lieu of any accrued but unused vacation time, and payment of any un-reimbursed expenses.
>
> B. In addition, in the event of the Employee's Involuntary Termination, including Employee's termination for Good Reason, the Company shall, conditioned upon the Employee's execution of a customary release of all claims against the Company and its affiliates in a form prescribed by the Company, pay to the Employee as severance ("Severance Payments") Employee's Base Salary, Plan Payments and any Bonuses as provided in Section Six of this Agreement for the remainder of the Initial Term of the Agreement.

(TE 1 at § 13).

A status hearing was conducted on June 25, 2019, at which time the parties agreed to a supplemental briefing schedule. The parties submitted supplemental briefs and the Court conducted oral arguments on August 7, 2019, after which the Court took this matter under advisement.

**IV.　Issues**

The threshold issue is whether the Provision is a true severance provision, or is instead a liquidated damages provision. If the Provision is a liquidated damages provision, the issue becomes whether the Provision is enforceable.

The remaining issues pertaining to damages are:

1.　Whether Ms. Sneva is entitled to reasonable attorneys' fees and costs.

2.　Whether Ms. Sneva is entitled to an award in the sum of all unpaid United States Trustee's fees accrued in her administrative case for the third quarter of 2017 through the fourth quarter of 2019.

3.　Whether Ms. Sneva is entitled to an award of treble damages pursuant to A.R.S.

§ 23-355(A).

**V. Law & Analysis**

    **A. <u>Severance vs. Liquidated Damages</u>**

Generally speaking, a liquidated damages provision sets forth a contractually agreed upon amount of damages in the event of a breach. *See Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 110, 393 P.3d 449, 451 (Ariz. 2017); *see also Damages,* Black's Law Dictionary (11th ed. 2019) (defining "liquidated damages" as "[a]n amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches"). "Severance," on the other hand, is typically "[m]oney (apart from back wages or salary) that an employer pays to a dismissed employee." *Severance Pay*, Black's Law Dictionary (11th ed. 2019).

The parties agree that the primary distinction between a liquidated damages provision and a true severance provision is whether the provision is triggered by a breach of the agreement. The parties disagree about whether the Provision at issue was triggered by R&G's breach of the Employment Agreement.

In her Complaint, among other things, Ms. Sneva sought declaratory relief and asked the Court to determine that she had been terminated not for cause, and that as a result, R&G was required to afford her all associated rights under the Employment Agreement. (Dkt. 1 at 6-7). The Court determined that Ms. Sneva had not been terminated for cause. (Dkt. 39). It is R&G's termination of Ms. Sneva without cause that triggered the Provision, not an express breach of the Employment Agreement.

R&G attempts to bypass this analysis by arguing that severance provisions are a form of liquidated damages, and as such are subject to a determination of whether the provision is meant to compensate or punish. R&G cites to *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 393 P.3d 449 (Ariz. 2017) as controlling. In *Dobson Bay*, the Arizona Supreme Court was dealing with a boilerplate liquidated damages provision in bank loan documentation, specifically a 5% late fee provision. 242 Ariz. at 109-10, 393 P.2d at 450-41. The case did not deal with a severance provision in an employment agreement, nor did it address

whether severance is liquidated damages. *See id.* R&G cited no Arizona authority dealing with the issue before this Court.

As noted in Ms. Sneva's pleadings, there is a split among the circuits on the question of whether severance payments comprise "actual direct compensatory damages." The First Circuit in *Howell* held that certain severance payments were not "actual direct compensatory damages" because severance payments are "at best an estimate of likely harm made at a time when only prediction is possible." *Howell v. F.D.I.C.*, 986 F.2d 569, 573 (1st Cir. 1993). Thus, the court concluded that severance payments are equivalent to liquidated damages or even penalties (when the damages are quite large). *Id*.

By contrast, at least two circuits, including the Ninth Circuit, have found that severance payments constitute "actual direct compensatory damages." *See, e.g., Monrad v. FDIC*, 62 F.3d 1169, 1174 (9th Cir. 1995), *superseded by regulation, as recognized in Erwin v. F.D.I.C.*, No. 10 CV 9467 VB, 2013 WL 1811924 (S.D.N.Y. Apr. 2, 2013); *Office & Prof'l Employees Int'l Union, Local 2 v. F.D.I.C.*, 27 F.3d 598 (D.C. Cir. 1994) [hereinafter, "*OPEIU*"]. In *OPEIU*, the D.C. Circuit addressed and rejected the *Howell* court's characterization of severance payments as liquidated damages. *OPEIU*, 27 F.3d at 603. Rather than as liquidated damages for termination of employment, the D.C. Circuit viewed severance pay as part of an employee's compensation package. *Id*. at 601-03 (determining that "an employer's promise to make severance payments is part of the *consideration* of the employment contract"). Likewise, in *Monrad*, the Ninth Circuit considered the analysis in *Howell*, rejected it, and concluded that the D.C. Circuit's opinion in *OPEIU* was better reasoned. 62 F.2d at 1174. Although *Monrad* and *OPEIU* dealt with provisions now prohibited by subsequent regulations, the reasoning of these cases remains sound and persuasive.

The evidence in this case clearly shows that the Provision providing for severance was part of the consideration of the Employment Agreement. Further, the Provision does not provide Ms. Sneva with a windfall. To the contrary, it allowed R & G to terminate Ms. Sneva at any time, for any reason, without cause, and if it did, the Provision required R & G to pay Ms. Sneva the delineated severance payments. As referenced in the dissent in *Dobson Bay*, it appears that R&G

prefers the rules of the playground, wherein a promise is unenforceable if the person making the promise has his fingers crossed behind his back. *See* 242 Ariz. at 116, 393 P.3d at 457 (Bolick, J., dissenting).

Based on the foregoing, it is the determination of this Court that the Provision was not triggered by a breach and is a true and enforceable severance provision.

### B. Even If the Provision is a Liquidated Damages Provision

The Court recognizes that some courts take the position that termination without cause constitutes a breach of an employment agreement. *See, e.g., Guiliano v. Cleo, Inc.*, 995 S.W.2d 88 (Tenn. 1999). Even if the Provision was triggered by a breach and is a liquidated damages clause, as R&G would lead the Court to believe, the Provision is nevertheless enforceable if the pre-determined amount of damages set forth therein sought to compensate Ms. Sneva rather than penalize R&G. *See Dobson Bay Club II DD, LLC*, 242 Ariz. at 109, 393 P.3d at 450.

Arizona has adopted the test set forth in the Second Restatement of Contracts for determining whether a liquidated damages provision is enforceable. *Id.*, 242 Ariz. at 111, 393 P.3d at 452. Under this test, a liquidated damages provision "is enforceable, 'but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.'" *Id.* (quoting Restatement (Second) of Contracts § 356(1) (Am. Law Inst. 1981)).

"The non-breaching party is not required to prove actual damages to enforce a liquidated damages provision." *Id.* Rather, the party seeking to avoid the enforcement of a liquidated damages provision has the burden of persuading the Court that the provision imposes an unenforceable penalty. *Id.*, 242 Ariz. at 112, 393 P.3d at 453.

1. Amount Must Be Reasonable in Light of Anticipated Loss or in Light of Actual Loss

Under the first prong of the Restatement test, the amount must be reasonable in light of the anticipated loss or in light of the actual loss to the non-breaching party. Reasonableness is a factual determination, but the parties have agreed that given the development of the record and posture of this case, the Court is in a position to rule on the enforceability of the Provision without

further evidence. (*See* Dkt. 49).

Under the Restatement approach, the amount need only satisfy <u>either</u> the prospective test <u>or</u> the retrospective test. Applying the prospective test in this case, the Provision represents a bargained-for provision that sets forth reasonably anticipated damages in the event of Ms. Sneva's termination without cause given the circumstances under which it was negotiated and given the unique nature of Ms. Sneva's employment.

The parties negotiated the Provision as part of the bankruptcy reorganization process, which involved World Dining LLC's acquisition of a 72.5% equity interest in R&G, which had been wholly owned by Ms. Sneva. The Provision was an essential component of the Employment Agreement that was designed to ensure that Ms. Sneva would: (1) be able to complete her plan payments; (2) be compensated at the same rate should R&G terminate her at its own convenience, without cause; and (3) share in the future success of the company she had established. The record is clear that the Provision was an element of Ms. Sneva's compensation package, an element of her buy-out, and was relied upon by third-party creditors who voted to accept the Joint Plan.[3] The Provision was intended to compensate Ms. Sneva, not penalize R&G.

Furthermore, the amount to be paid under the Provision was reasonably dependent on the timing of Ms. Sneva's termination and R&G's future performance, and contrary to R&G's assertions, the Provision does not bestow a windfall upon Ms. Sneva. Had she not been terminated without cause, Ms. Sneva would presumably still be working for R&G and would be entitled to the same monetary sum over the course of her bargained-for employment term.

Given that the Provision satisfies the prospective test, there is no need for the Court to engage in a retrospective analysis. The Provision satisfies the first prong of the Restatement test.

2. <u>Amount Must Be Reasonable in Light of Difficulties of Proof of Loss</u>

In addition to setting forth an amount that is reasonable in light of the anticipated or actual

---

[3] The *Second Amended Disclosure Statement* (Admin. Dkt. 480) describes the Employment Agreement, and a copy of the Employment Agreement is attached to the *Amended Supplemental Disclosure Statement* (Admin. Dkt. 507 at Ex. J). The stipulation for plan treatment reached by Ms. Sneva, R&G, and Mr. Sneva expressly provides for payment of Mr. Sneva's secured claim from Ms. Sneva's salary, Ms. Sneva's bonuses, Ms. Sneva's dividends, a fixed payment from R&G pursuant to the Employment Agreement, and any sale of Ms. Sneva's stock in R&G. (Admin. Dkt. 544 at Ex. B). Furthermore, this Court has already determined that the Employment Agreement was an integral part of the Plan. (Admin. Dkt. 671).

loss to the injured party, in order to be enforceable, a liquidated damages provision must also be reasonable in light of the difficulties of proof of loss.

As the parties acknowledged during the trial to determine liability, Ms. Sneva has a unique employee profile. Prior to confirmation of the parties' Joint Plan, Ms. Sneva had been the owner and manager of R&G for over 25 years. Ms. Sneva was subject to the non-compete clause in the Employment Agreement, and Ms. Sneva testified that although she had applied for a number of jobs, she had been unable to obtain employment following her termination. (*See* 3/22/2018 Trial Tr. 94:2-12, 95:2-7).[4]

Calculating mitigated damages in this case would be complicated given the difficulties that would be involved in trying to determine whether Ms. Sneva could have found comparable employment, and if so, in calculating how long it should have taken her to find comparable employment.

It is this Court's determination that the damages amounts are reasonable in light of the difficulties of proof of loss. Given that the Provision satisfies the prospective damages test and is reasonable in light of the difficulties of proof of loss, even if the Provision is a liquidated damages clause rather than a true severance provision, the Provision satisfies both prongs of the Restatement test and is therefore enforceable.

### C.  **Other Damage Claims**

1. Attorneys' Fees

Section Twenty-One of the Employment Agreement provides:

> In the event that any action or any arbitration or other proceeding is brought in relation to or for the enforcement of this Agreement, the non-prevailing party in the action shall pay to the prevailing party, in addition to all the sums that either party may be called on to pay, a reasonable sum for the prevailing party's attorney's fees.

(TE 1 at § 21).

The Employment Agreement does not define "prevailing party." The Employment Agreement does, however, include a broad choice-of-law provision pursuant to which the parties

---

[4] References to the trial transcripts are by page and line number. For example, "3/22/2018 Trial Tr. 94:2-12" would refer to page 94, lines 2-12 of the trial transcript from March 22, 2018.

agreed that Arizona law would apply to all proceedings brought with respect to the Agreement. (TE 1 at § 19(C)). Accordingly, the Court will look to Arizona law, specifically A.R.S. § 12-341.01 and the case law interpreting such provision, to determine whether Ms. Sneva is the "prevailing party." *See Am. Power Prod., Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 365–66, 396 P.3d 600, 601–03 (Ariz. 2017).

In a contested matter arising out of contract, A.R.S. § 12-341.01 allows a court to "award the successful party reasonable attorney fees." For purposes of A.R.S. § 12-341.01, just because a party is not granted all the relief it requested does not mean that party is not the "successful," or in this case, the "prevailing," party. *Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 13, 261 P.3d 784, 788 (Ariz. Ct. App. 2011). "In cases involving various competing claims, counterclaims and setoffs all tried together, the successful party is the net winner." *Id.* (quoting *Ayala v. Olaiz,* 161 Ariz. 129, 131, 776 P.2d 807, 809 (Ariz. Ct. App. 1989)). "[I]n a case involving multiple claims and varied success, the trial court may apply a 'percentage of success' or a 'totality of the litigation' test" in order to determine who is the successful party. *Id.*, 228 Ariz. at 13-14, 261 P.3d at 788-89.

Although R&G presented Ms. Sneva with an offer of judgment, R&G has not argued that Ms. Sneva would have obtained a more favorable judgment under its offer. (*See* Dkt. 20). Given that the Court found that R&G materially breached the Employment Agreement and granted declaratory relief to Ms. Sneva, it is clear in this case that Ms. Sneva is the prevailing party and is entitled to her reasonable attorneys' fees pursuant to the express language of the Employment Agreement despite the Court's finding that Ms. Sneva immaterially breached a provision of the Employment Agreement.

2. <u>U.S. Trustee Fees</u>

Under the terms of the Employment Agreement, R&G is obligated to make "Plan Payments," defined as "certain payments for the benefit of [Ms. Sneva], related to [Ms. Sneva's] confirmed Chapter 11 Plan of Reorganization." (TE 1 at § 4). Ms. Sneva has not argued that U.S. Trustee fees are among the designated Plan Payments that R&G is obligated to make. Furthermore, R&G is not obligated under the express terms of the Joint Plan to pay Ms. Sneva's

accrued U.S. Trustee fees. (*See* Admin. Dkt. 481). Ms. Sneva has not cited to any other basis upon which she would be entitled to payment of her U.S. Trustee fees, and this request is therefore denied.

3. Treble Damages

Ms. Sneva has asked the Court to award her treble damages pursuant to A.R.S. § 23-355(A), which provides in part: "if an employer, in violation of [an Arizona's Employment Practices and Working Conditions statute], fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."

A.R.S. § 23-350(7) defines "wages" as "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation." This definition of "wages" used to be broader, to include in the definition of "wages" "sick pay, vacation pay, severance pay, commissions, bonuses and other amounts promised when the employer has a policy or a practice of making such payments." Ariz. Rev. Stat. Ann. § 23-350(6) (amended 2016) (emphasis added). This language was removed effective August 6, 2016, before the Employment Agreement was executed, which suggests that the Arizona Legislature intended to remove severance pay from the category of compensation that can qualify for treble damages. Furthermore, A.R.S. § 23-355(A) is entirely discretionary.

In this case, the Court will not exercise its discretion to award Ms. Sneva treble damages, to the extent such damages are even available under these circumstances, especially in light of the recent changes to the statutory text of A.R.S. § 23-350(7).

**D. Gary Sneva**

Mr. Sneva has asked that certain provisions in the Proposed Judgment be revised to provide for payment of certain amounts from R & G directly to him. Given that Mr. Sneva is not a party to this adversary, the Court will not require that Mr. Sneva's proposed changes be incorporated into a form of judgment. This ruling is without prejudice to Mr. Sneva's right to

enforce his rights and seek appropriate relief in the administrative case, nor to any other party to object to or defend against such relief.

**VI. Conclusion**

Based upon the foregoing, and in consideration of the totality of the circumstances and evidence presented, the Court finds and concludes that the Provision is a true and enforceable severance clause. In the alternative, the Court finds that the Provision is a valid and enforceable liquidated damages clause given that the amount set forth therein is reasonable in light of Ms. Sneva's anticipated damages and is reasonable in light of the difficulties of proof of loss in this case.

Pursuant to the enforceable Provision, Ms. Sneva is entitled to Severance Payments, comprised of her Base Salary, Plan Payments, and Bonuses, as defined in the Employment Agreement, for the remainder of the Initial Term of the Agreement.

The Court further finds and concludes as follows:

(1) Under the express terms of Section Twenty-One of the Employment Agreement, Ms. Sneva, as the prevailing party, is entitled to her reasonable attorneys' fees and costs incurred in this adversary. Ms. Sneva's counsel is to file an affidavit of fees and costs within fourteen (14) days from entry of this ruling, for consideration by the Court.

(2) There is no basis upon which to award Ms. Sneva the fees due the U.S. Trustee pursuant to her obligations under the Joint Plan.

(3) The Court will not exercise its discretion to award Ms. Sneva treble damages, to the extent they are even available under these circumstances.

(4) As stated above, this ruling is without prejudice to Mr. Sneva to seek to enforce his rights under the Joint Plan and to seek appropriate relief in the administrative case, nor to any other party to object to or defend against such relief.

The foregoing constitutes the Court's ruling regarding damages sought in this adversary proceeding. Counsel for Ms. Sneva may upload a form of Judgment consistent with the Memorandum Decision and this Supplemental Memorandum Decision.

**DATED AND SIGNED ABOVE.**